***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the Parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The plaintiff is Debra Scott.
2. Defendant-employer is West Pharmaceuticals.
3. Zurich North America is the carrier on this claim.
4. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction over the parties, and all parties have been properly named in this action.
6. Stipulated Exhibit 1, which includes Industrial Commission Forms, Medical Records and photographs, is hereby stipulated into the record.
7. The plaintiff's average weekly wage was $454.00, which results in a compensation rate of $302.68 per week.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was 40 years old at the time of hearing before the Deputy Commissioner. Before working for defendant-employer, the plaintiff worked at Nationwide Insurance, Belk's, and Corbett's Jewelers. The plaintiff has obtained a GED, and attended cosmetology school.
2. The plaintiff's psychological treatment prior to the work-related event at issue consists of two episodes. The first episode of psychological or psychiatric care occurred in 1997, when the plaintiff sought counseling after a cement block was thrown from an overpass through her vehicle's windshield. The plaintiff recovered from this incident.
3. The second episode of psychological or psychiatric care occurred on January 18 through 21, 2003, when the plaintiff was involuntarily committed to UNC-Hospital for alcohol abuse at the request of her daughter. She was diagnosed with benzodiazepine and ETOH (alcohol) abuse and depression. The plaintiff was angry about being committed, but became cooperative and polite during her stay at UNC-Hospital.
4. The plaintiff began working for defendant-employer in 1991.
5. The plaintiff was working as a trimmer in the finishing department in January 2003. She worked the day shift with a large number of employees. The plaintiff felt that everyone could converse with each other, and that there was a family relationship among the employees.
6. On January 29, 2003, a horrific explosion occurred at defendant West Pharmaceutical's plant in Kinston, North Carolina. The plaintiff was working her normal shift when the explosion occurred. The plaintiff heard the explosion in the room next to her, and she could see the fire the ensued. The power went out, and the plant completely filled with smoke. The plaintiff could not see and called out for help. Floyd Gooding, a co-worker, was able to locate the plaintiff in the smoke and helped her to safely exit the building through the smoke and fire.
7. Once outside of the building, the plaintiff observed the mass confusion that was occurring, and witnessed an individual who was on fire. The plaintiff's boyfriend, Kevin Smith, saw her after the explosion. Mr. Smith testified that the plaintiff was upset, hysterical, crying, in shock, and had difficulty speaking. Although she was not burned, the plaintiff did have various bruises and contusions, and was sore from them. At least six people died as a result of this explosion, and numerous others were badly burned.
8. The plaintiff has been unable to work since the explosion. She testified that she would like to work, but does not feel like she could do so.
9. The plaintiff testified that she is scared all the time and cannot sleep. She is unable to be in the dark, and cries all the time. Loud voices scare her. She does not feel safe, and it is difficult for her to ride in a car.
10. The plaintiff recalled a particular incident when a helicopter flew by her. It made her run and hide, and caused her to scream and cry. On another occasion, the electricity went out and caused her to become very scared and cry. The Full Commission notes that a number of helicopters were at the scene of the explosion, and that the electricity went out on that day.
11. Prior to the explosion incident, the plaintiff was happy and socially active. She liked to work and was a good worker. Since the explosion, the plaintiff has been unable to sleep and stays up all night. She stays at home and wants someone to be with her at all times.
12. Following the explosion, the plaintiff went to three counseling sessions with Dr. Virginia Hardy of Cambridge Health Services. Defendants paid for these sessions. The plaintiff's first meeting with Dr. Hardy was on February 11, 2003. The plaintiff disclosed that she gets startled quickly, and has nightmares, nervousness, and uneasiness. She also explained that she only goes out when she has to, and that she is not sleeping well. The plaintiff also stated that when her boyfriend leaves her, she turns on all the lights and talks on the phone until he returns.
13. The plaintiff was seen by Dr. Hardy again on February 18, 2003. She was still experiencing symptoms, and Dr. Hardy noted that the plaintiff "seems stuck and not ready to move."
14. The plaintiff's last session with Dr. Hardy was on February 26, 2003. The plaintiff explained that she was having panic attacks. It was noted that she would not clean her glasses from the explosion, and that she had not thrown away some hair dye that she had purchased for a friend who was a casualty of the explosion.
15. The plaintiff was also treated a number of times by her general physician, Dr. James Previll. Dr. Previll treated the plaintiff for post traumatic stress disorder and gave her anti-anxiety medication. Dr. Previll noted that the plaintiff "continues to have trouble sleeping" and has "crying problems." He also noted: "She was in the fire at the plant in Kinston and still has anxiety about the event daily. She stays at home because she is afraid. She has been to counselors but may need psych evaluation."
16. Dr. Verne Schmickley, a psychologist, evaluated the plaintiff at defendants' behest on November 13, 2003. Most of the Independent Psychological Evaluations done by Dr. Schmickley are referrals from insurance adjusters and defense attorneys. Dr. Schmickley's Report of Independent Psychological Evaluation, as contained in the record, provides the following caveat: "The statements [this report] contains should be viewed as hypotheses to be validated against other sources of data." Dr. Schmickley noted that the plaintiff indicated that she had headaches, migraine headaches, muscle contraction headaches, dizzy spells, fainting, heart palpitations, loss of appetite, fifteen-pound weight fluctuation, and numerous other symptoms associated with post traumatic stress disorder.
17. Dr. Schmickley was of the opinion that the plaintiff's post traumatic stress disorder pre-existed the explosion and fire of January 29, 2003. He based this opinion on the 1997 incident involving the cement block that crashed through the plaintiff's windshield, and the plaintiff's involuntary admission at UNC Hospitals for alcohol abuse. However, Dr. Schmickley stated that this pre-existing condition could have been exacerbated by the explosion. He further stated: "That explosion would psychologically affect anybody."
18. The plaintiff was also evaluated by Dr. Frank James on April 3, 2004. Dr. James is a psychiatrist and professor of psychiatry at East Carolina University School of Medicine, where he has served as chairman of the Department of Psychiatry, and is also the director of the Personal Counseling Center. Dr. James was a flight surgeon in Vietnam, and has treated numerous people for post-traumatic stress disorders.
19. Dr. James diagnosed the plaintiff with post traumatic stress disorder. He was of the opinion that the post traumatic stress disorder is a direct result of the explosion and fire at defendant-employer's plant on January 29, 2003. He disagrees with the opinion expressed by Dr. Schmickley that the plaintiff's post traumatic stress disorder was pre-existing.
20. Dr. James further was of the opinion that the plaintiff, as a result of the explosion and fire, has been unable to work at any employment since the date of the explosion and will require further psychiatric treatment.
21. Based on his experience, testimony, and the methodology of his examination of the plaintiff, the Full Commission gives greater weight to the testimony of Dr. James as opposed to the testimony of Dr. Schmickley. Thus, the Full Commission finds that the plaintiff suffers from post traumatic stress disorder as a consequence of the horrific explosion and fire that the plaintiff experienced firsthand at defendant-employer's Kinston plant on January 29, 2003. Alternatively, the Full Commission finds that even if the plaintiff's post traumatic stress disorder pre-existed the plant explosion, both experts agree that the condition would have been exacerbated by the explosion.
22. The Full Commission finds that this appeal was brought by defendants and that by the Opinion and Award provided herein, the Full Commission orders compensation to be paid or continued. It is therefore appropriate that the Full Commission award to the plaintiff appropriate attorney's fees in connection with the plaintiff's defense of the appeal. The Full Commission finds the reasonable costs of such to be $2,000.00 based upon the time spent, the experience of the lawyer involved, and the complexity of the issues raised.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on or about January 29, 2003, which caused her to develop post traumatic stress disorder. N.C. Gen. Stat. §97-2(6).
2. Alternatively, even if the plaintiff's post traumatic stress disorder was pre-existing, it was significantly aggravated by the explosion and fire at defendant-employer's plant. It is well settled that an employer must take his employee as he finds her, and the employer is liable for the full extent of a compensable injury even where a pre-existing condition substantially contributes to the degree of the injury. See Frady v. Groves Thread, 56 N.C. App. 61, 286 S.E.2d 844
(1982). Moreover, the aggravation or exacerbation of a pre-existing condition that results in a loss of wage earning capacity is compensable under the Workers Compensation Act. Ruffin v. Compass Group USA,150 N.C. App. 480, 563 S.E.2d 633 (2002); Smith v. Champion, Int'l.,134 N.C. App. 180, 517 S.E.2d 164 (1999).
3. The plaintiff has been disabled since January 29, 2003, as a result of her compensable injury by accident. As a result of her compensable injury by accident, the plaintiff is entitled to temporary total disability compensation at a rate of $302.68 from January 29, 2003, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to receive medical treatment that is reasonably necessary to effect, give relief, or lessen her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Because defendants brought this matter without reasonable grounds, the Full Commission may assess the whole cost of the proceedings, including reasonable fees for the plaintiff's attorney, upon the party who has brought or defended them. The purpose of the statute providing for the award of attorney's fees to claimant is to prevent stubborn, unfounded litigiousness that is inharmonious with the primary purpose of Workers' Compensation Act, which is to provide compensation to injured workers. N.C. Gen. Stat. § 97-88.1; Chavis v. Thetford Property Management, Inc.,155 N.C. App. 769, 573 S.E.2d 920 (2003).
6. Defendants are entitled to a credit for any unemployment paid to the plaintiff, pursuant to N.C. Gen. Stat. § 97-42.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation at the rate of $302.68 per week from January 29, 2003, and continuing until further Order of the Commission. The portion of this award that has accrued shall be paid to the plaintiff in lump sum subject to the attorney's fee provided herein.
2. Defendants shall pay all medical expenses resulting from the plaintiff's compensable injury by accident, and shall pay all future medical treatment that is reasonably needed, which shall include, but not be limited to, psychiatric and psychological treatment from Dr. James.
3. Defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due the plaintiff. The portion of such fee that has accrued shall be paid to the plaintiff's counsel in lump sum; thereafter, the plaintiff's counsel shall receive every fourth check due the plaintiff.
4. Pursuant to N.C. Gen. Stat. § 97-88.1, defendants shall pay to the plaintiff a reasonable attorney's fee in the amount of $2,000.00 in connection with the plaintiff's defense of this appeal.
5. Defendants are entitled to any applicable credit pursuant to N.C. Gen. Stat. § 97-42.1.
6. Defendants shall pay the costs, including an expert witness fee in the amount of $500.00 to Dr. Verne Schmickley, if not paid by prior order.
This 1st day of August 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER